Call the case of S.H. and her mother, Carol Durell, and I'd like to reserve three minutes for rebuttal, please. Your Honors, S.H. is a student who was a child with disabilities and in special education for five years, a little over five years. For the point in time at issue in this case and what she is seeking a remedy for, she was a child with a disability classified by the school district. Although we would later learn in her 10th grade year that she did not have a disability, there is no doubt that during those years she had evaluations by the school district, she had IEPs, she had all the trappings of the special education system. So she was, for that period of time, which is the period of time for which we are seeking a remedy, a child with a disability, even though in fact it was learned later that she was not. But who knew at the time during those five years that she was not until a culminating event? Was there knowledge during the five years that she was not a child with a disability? The law, Your Honor, places the responsibility for identification squarely and only on the school district. The school district evaluated her in 2004 and did not do the evaluation the way they should have. But had they done that- How should they have known? What should have put the antenna up at that point that, hey, maybe she's really not disabled? Well there were three pieces that they should have known. First of all, the child was succeeding in classes. And that's reported in the initial evaluation, in the 2007 evaluation, and in the 2009 evaluation. But the fact that, I mean, in a way it's a flip side of the other argument in one respect, the fact that she's doing better could be an indication that the services she's receiving are effective as opposed to she shouldn't be receiving those services, isn't it? Well, Your Honor, that could be the case, except the facts here show the opposite. And I would direct the Court's attention specifically to, for example, a reading test the child had, which is at Appendix 1239. This is a reading test that was given to the child about three months after S.H. went into special education. She was in fifth grade. But her scores on that test were above grade level. So that should have tipped someone off. Was that consistent with the other scores administered, tests administered at the same time, or roughly the same time? It was an indicator, yes, that was consistent, because she had an average IQ, a little bit above average IQ, and she had all average scores in her academics on the testing. There's no dispute about that. And the law says that the quintessential definition of a child with a specific learning disability is a child who has an average intelligence, but is not performing at an average level. And what we have here, and what the independent evaluator found, is that this child was always demonstrating, essentially, average intelligence and average performance. So she did not fall within this construct of a typical child with a specific learning disability. But the real problem here is that after this period of time, and in the fall of her tenth grade year, after she had objected to special education and her mother had, in the fall of 2009, when they asked for a special education hearing, we went, we requested a special education hearing, because that seemed the logical thing to do, the child was in special education. That's your first recourse for reform. And that's because, as this court has found, and all courts have found, that this special education forum is where any matter about a child who has a disability is to be heard in the first instance. And when we went there, we had it filed in 2009, end of 2000, November 2009, we asked in this request for hearing for an independent evaluation. That comes out in 2010, and then the school district says, well, if you're not a child with a disability, you have no rights, you can't come to this forum, and it's gone. And that cannot be the law, because the law has always protected the children who have been in special education, and Salima was in special education. So she should have the right to have had her case heard by an independent hearing officer on the merits and had factual findings made, and that didn't happen. So we believe the motion to dismiss by the lower court was incorrect and should be reversed. But wasn't there a finding made that she was a young child with a disability and asserts that she never was a child with a disability? Is that not a, in concluding that there's a lack of jurisdiction, isn't that a finding that she's not disabled? I think the confusion is, it's a time frame issue. She was clearly treated as a child with a disability for the five years she was in special education. She was determined in April of 2010 to actually not have a disability, and that's when she was exited from special education. What is it that you wanted, that you want at that moment in time in 10th grade? I mean, I understand that you want us to look back now and say, judges, if you look from 5th grade to, right, 5th grade to 10th grade, her grades were good, her test scores were good, there were no objective indicia of a child with a disability, so she was misclassified or misdesignated, whatever verb you want to use, and therefore we deserve damages as a result. But what is it in 10th grade that should have happened that can't happen? I mean, she should have had a hearing, she shouldn't have been kicked out, but you're advocating that at that point in time and earlier, she wasn't a child with a disability. It is an unusual situation, perhaps, but let me try and clarify this. When a child is in special education, and this is what happened with SH, one of the things that happened to her is that she did not receive the richness of the general education curriculum when she was in special education. So for example, she did not have science, she did not have some other classes, so she had gaps in her knowledge and in her education. And what we were seeking then and what we're seeking now is a way to afford her a remedy for those gaps in her knowledge. Even though she's an average intelligent student, and even though she was doing well in the classes she took, she still had gaps because she just wasn't exposed to certain information. So for example, when she was in sixth grade, her IEP called for her to be taught fifth grade reading. She then took the sixth grade standards test for the state and she did not do well. Well, she wasn't exposed. So it's the gaps that we're looking to fill. Now in order to get money damages to remedy this, there would be the standard of intentional discrimination that we were talking about in the prior case. You've also, I think, sought compensatory education? We have. And that was recognized in both the district court and we asked for that at the hearing officer level and the motion to dismiss, Judge Bartle recognized that we requested compensatory education. Now what would that look like and is there a deliberate indifference or intentional discrimination standard with respect to the award of that? There is not an intentional standard for compensatory education versus compensatory damages. Compensatory education comes from case law, Lester H. versus Gil Hull in the IDEA context. It does not come from that. But you're asking for that and what would that look like if we were to, if that were to be awarded? That would look like essentially counseling, tutoring. We did at the initial stage ask for assistance with college tuition and college classes as well. So you want tutoring at college to enhance the educational experience? I don't think it's enhancing, it's to fill the gaps. That's really what we're looking for. As an example, I would say when she takes a math class, there's just pieces missing. There's just things she doesn't know. So it's tutoring for that type of assistance is what we're really looking at. My time is almost expired and I don't want to finish without addressing the ADA 504 regarded as claim, which I do think is unique. I don't know of another case specifically on regarded as that's been brought to this court other than a related case to this one. I do think it's important to point out a couple things. Basically there is no reason that we should have loss at summary judgment. We put on prima facie evidence and the district court did not correctly look at that evidence. That evidence was clear. The district under the deliberate indifference standard that you were just discussing knew or should have known and failed to act both on the indices that the child was not disabled and its own self-assessment in 2006 that it had a disproportionate number of children who were African American in special education. What is there in the statute that we can look to for the damages that you see? Obviously the statutory scheme is a remedial one, right? You're classified, you need certain services. If you're not getting those services, there are various administrative hurdles you need to get those services. So now the claim is, well, I really wasn't classified, so I'm really not a child with a disability, so I want certain services. It seems one perspective would be it's antithetical to the real purpose of the various statutes that we're talking about. How do we get over that hurdle? Well, that's a great question. The answer is that the IDA has always recognized the necessity for a broad determination of the circumstance, and in the IDEA, in fact in the very first version of the Education for All Handicapped Children Act as cited in our brief, this concern about over-identification was specifically acknowledged by the Senate report. So this is well within the intent of the IDEA and well within the appropriate relief, and I see my time has expired. Relax, you don't have to go. Okay, thank you. So I'm very interested in the last point that you made. We're aware, we've read all of the literature arguments about that, but how does that come into our discussion here? Because one of the concerns is always the slippery slope, right? It would appear that SH is above grade level on some indicia and then below grade level on some. We have evidence in the record that SH's mother was like, can she get some more help on this? Can she get some more help on that? And I'm not chiding her mother, that's not my point, right? But now as we, let's say you get everything that you're asking for here. So now school districts are, I don't know, you know, she's one grade below grade level. You know, she could use some help, but you know, now we're going to be hit with, you should never have classified her. Damned if you do, damned if you don't. Yeah, I mean, and it really would, I mean, we're big boys, we're not going to worry about opening the floodgates, but it is a concern that, you know, now school districts got to look both ways and they're trying to figure out, you know, if I classify this African American or Hispanic or name the minority improperly, I'm going to get a lawsuit in court because the kid had to live through the ignominy of being designated. Well, I think that the short answer to that is, that's precisely why in our reply brief we address this quite a bit, the forum where these should be handled is this special education hearing process, because there's many opportunities there to sort of sort it out. And I think that that is the reason there should, if that forum, Isn't that what happened in 2009? She has this hearing and the hearing officer says, she's not disabled and she's exited. Isn't, if that's your response, tell me why the system, timing is the issue perhaps, but isn't that exactly what occurred here? No, it isn't, because this hearing officer made no findings of fact. This hearing officer, She's not disabled, what is that? Well, that was not a finding of fact, it was an assumption he made. There was no particular findings of whether the school district had correctly evaluated or not correctly evaluated, whether there was a remedy and so forth. But to answer Judge Greenway's question in terms of the slippery slope, these kids, and there are, it is fair to say according to the statistics, there are kids in this situation beyond my client. I do not think that it's going to be a situation of the floodgates, because the issue in this case is very narrow in terms of the appropriate evaluations. And that responsibility again is the school district's responsibility to be correctly identifying. And the key in this case, and for most of these children, because many of them get classified as having a learning disability, is whether or not there were observations done in the classroom. And I would leave it with that. But I don't really think it's going to be an issue of thousands of lawsuits. Thank you. May I please squirt? My name is Michael Christofko. I represent the Laura Marion School District. I'm here with Co-Counsel Amy Brooks and Jenna Berman. Could you lift the microphone just a little bit, please? Thank you. Sure. And I also have with me in the courtroom the Student Services Administrator from the Laura Marion School District, Siobhan Stavage. Initially I would like to address the first argument which is made, which is that the IDEA claim should have been allowed to survive, despite the fact that the plaintiffs claimed that the student was not disabled and never had been disabled. I think the IDEA is pretty clear that its protections apply to students who are disabled or who are suspected of being disabled. Well, isn't she suspected of being disabled from fifth grade to tenth grade? She was identified by the school district as being a student with a learning disability from fifth grade through tenth grade, at which point in time, as a result of the IEE, the requested that she be exited from special education. And the district complied with that request and exited her. Well, you would agree that the only entity that can determine, in this circumstance, who is disabled is the school district, right? No. I would disagree with that. The school district does not have the power to assign a student to special education without the parent's consent, and the parent always has the ability, under the regulations, to do that. Right. So with the consent of the parent, from fifth grade to tenth grade, the SH was deemed disabled. So why shouldn't SH do compensatory, I guess, I know there are several components, but let's just call it compensatory education now, for the moment, so that I don't have to go through the litany, for that period of time? The reason why is because, for that entire period of time, SH never challenged her placement, never challenged any of the IEPs, never challenged her placement, never challenged any part of the program. Let me ask you a question. Suppose SH, in fifth grade, was testing at seventh grade level, and in sixth grade, eighth grade level, and so on, right? But yet, was classified, and the parents were from Kiev, and didn't speak English, and they're black Russians, okay, so whatever. You've never met a black Russian? Why are you laughing? It's just a drink. My point is this, in that hypothetical, parents don't know any better, they're always going to accede to authority, they sign off, right? Would you agree that in that hypothetical, the school district has made a mistake in assessing that the child is a child with a disability? Assuming that you're saying that the child was performing at a certain level. I don't know what the ability of the child was. Let's assume that in every objective indicia that one could choose, the child seemed to be fine, except the child's ability in the spoken word, because of the language deficit, was challenged, and that was the basis, ostensibly, that a determination as to disability was made. Would there still be a problem? Well, as I understand the question, Your Honor, the question is, if the district had clear knowledge that a student wasn't disabled, but then classified the student as disabled anyway, then what? Then what would be the issue? Right. Well, in that circumstances, the parents have rights. They're given procedural safeguard notices every time that they meet for an IEP meeting, every time they sign off on a new placement, every time they sign off on a new evaluation. Assuming that the parent didn't take advantage of any of those rights. The student turns 18 years old, the student could then, assuming that they could prove that there was some sort of intentional, deliberate indifference on the part of the district, bring a claim. Under the IDEA? Not under the IDEA. The claim would have to be brought under the discrimination statutes of 504 in the ADA. The claims under the IDEA are limited in a couple of different ways. Number one, it's limited by a pretty narrow statute of limitations, because they don't want people going back 10 years and saying, okay, let's go back and pick apart what happened in fifth grade, now that you're a senior in high school, and see what should have been done then. Because the idea of the IDEA procedures is to provide students with ongoing, appropriate education. And so, therefore, those claims have to be brought in a timely manner. In this case, no such claims were brought. There was one single claim that was brought in ninth grade, at the end of ninth grade, that was a claim for denial of faith, and a claim that the parent disagreed with the evaluation. Okay, so... It's a basically due process hearing. Exactly. Okay, so in the hypothetical then, you'd agree then that there could be an RA or ADA claim if the child was otherwise performing, and yet was classified. If it was clear that the child was not disabled, but the district identified the child as disabled anyway, despite knowing the fact that it wasn't disabled, and an official with knowledge of that fact acted in that manner, in a deliberate way, yes, that would satisfy the requirements of deliberate indifference that would raise the possibility of a claim. For damages. Correct. For damages. Okay, so then let's move it closer to our case. Okay? So it's not two years ahead, as in my hypothetical, but it's at grade level, at or about grade level. Some things a little above, some things a little below, which I'm not an educator, but I would guess that a lot of kids are a little above and a little below. Yet, the child is classified. This case, to explain to you what the classification is, the specific learning disability classification has nothing to do with, is this child performing at grade level? The classification has to do with, is there a discrepancy between a child's ability, meaning their potential measured through their IQ, versus their achievement? In this case, yes, S.H. had average scores on her WISC, on her IQ test. It says that in the 2004 evaluation report. It was acknowledged by the psychologist. She had average scores in this area. However, where she had below average was in certain performance criteria that indicated that it was below or greater than one standard deviation between those two scores, indicating that there was a discrepancy, a severe discrepancy that qualified her for being diagnosed with a specific learning disability. That's how that comes about. When we talk about, is a child performing above or below level, it's much more complicated than that. It's not as clear cut to just look at a child's performance on a test and say, okay, they scored this on a test, therefore they either are or are not disabled. There's a wide variety of factors that have to be taken into consideration in making that assessment. In this particular case, S.H. was evaluated. It was determined from the evaluation that she had a specific learning disability and she was programmed for that learning disability. She was provided additional services. There were indications in the record that she was struggling in class. There were notations from classroom teachers that were in the 2004 report. The parent requested additional services for S.H. indicating that she was concerned that her score on the PSSA was below proficient and that she was struggling. Several of the other tests that she took showed below average scores in reading. Did she have some tests that showed average? Yes. Are these the same tests that Opposing Counsel referred to as being administered some three months after she was identified as in need of additional services? The one test that Opposing Counsel was referring to was a test that was administered in fifth grade. It was right after the evaluation was conducted. The information that the psychologist had on hand at the time of the evaluation was a test during third grade, which was a test on the Pennsylvania System of School Assessment, the PSSA test, and also a test in fourth grade, the degrees of reading power test, both of which showed she was performing below benchmark. Additionally, there was the fact that the psychologist administered her own testing, intelligence testing, achievement testing, and gathered that data as well. Let me ask a question about compensatory education. We're talking about compensatory damages. Then we've got the 1983, we've got the deliberate indifference or intentional discrimination test. But compensatory education, there's no requirement, is there, for intentional discrimination in order for that to be awarded? There's a dispute as to whether compensatory education was even requested in this case. Well, we have a statement in our amended complaint. Plaintiffs requested, and I quote, additional educational services designed to remediate any deficiencies caused by her misidentification and misplacement into special education. Doesn't that request compensatory education? Compensatory education is a phrase that's used under the IDEA that requires school districts to provide, the school districts themselves, to provide additional educational services to a student who has been deprived. That's what compensatory education is. All right. Wouldn't that fulfill what she's saying? She's got gaps, the science and the math, et cetera? What she's asking for here is additional tutoring services. They produced an expert report from an economist that put a dollar value on these services and said, this is what we're entitled to, is the money to pay for these services. It's not an equitable remedy. And in fact- Well, isn't it statutory, compensatory services? Not under section 504 of the IDEA. All right. You're talking about it's under IDEA or it's under- It's under IDEA. And so therefore, it wouldn't be? It's exactly. Oh, it's for a failure of FAPE, correct? That's right. And which is an IDEA concept. Okay. So this is not a failure of FAPE. Exactly. And if there's no cause of action under the IDEA, then that relief wouldn't be- Then it goes by the wayside. Would that form of relief or some, if we were to find that there was value in that relief and a legal basis to award it under the discrimination statutes regarded as, would there be a basis to do so as a matter of injunctive relief that would require a lesser showing of culpability and deliberate indifference? Well, there's not for two reasons. The first- And I'm asking now about the ADA and section 504. Right. Because there's spending clause litigation or statutes, both the ADA and section 504 provide for contract-like remedies. So in this case, the remedy- It'd be like specific performance, yeah. Exactly. That would be a contract-type remedy. In this case, what's being requested for here is compensatory damages is what's being requested. That was what was put forward. Well, but she said services to remediate deficiencies, which looks like specific performance. That was what was said in the wherefore clause of the complaint. In summary judgment in front of the district court, this argument was not made at all, which is why when you look at the district court's opinion, you will see not one single mention of it. It was not raised and we put forth in the brief that this argument has been waived. It wasn't brought forward at a point in time when the district court could have addressed it. And in fact, I would argue that the reason it wasn't brought forward is because they had their expert economist put together a damage report that came up with a dollar amount and said that this is the dollar amount of money we're looking for to pay for all of the various things we would like for her. Well, you could also say that's kind of like asking for compensatory education is like a backdoor of the damage clause. And in this case, that's exactly what that is. And it was not an argument that was advanced on summary judgment below. And in fact, the summary judgment proceeding, the district argued that a showing of intent was required because of the fact that they were seeking compensatory damages. And at no point in response to that did the plaintiffs come back and say, oh no, no, no, we're also seeking injunctive relief. That issue was squarely teed up and the district court decided it on that basis. And one of the other items I would like to point out to the court is that there is a good part of the brief that the plaintiffs submitted deal with this whole idea of informed consent of the parent. And I would suggest to this court that the formulation being put forth by the plaintiffs is completely unworkable, which is a parent does not have informed consent if after the fact, the parent subjectively believes that some fact, had they known it at the time, might have influenced their decision otherwise. That is a standard that means that no parent would ever give informed consent in any of these proceedings. And in fact, the cases which talk about the consent which is required, talk about informed consent being a product of following the procedural safeguard notices and providing the parents with knowledge as to what their rights are to challenge the things that have occurred in the process. It's absolutely undisputed that at every stage along the way, the plaintiffs receive the procedural safeguard notices, they were well aware of what their rights were, and in fact, they exercised those rights at the end of 9th grade, requested an IEE, received the IEE, and then revoked the consent to have SH in special education. Let me ask you this question. Suppose let's do the inverse of what we've been discussing. That is, someone is appropriately classified in the way that you've described, and if I was not performing up to the potential that their IQ indicated they should, right? So they're given whatever it is, additional services, they are prescribed by the school district, school district and the parent agree, right? So let's say it begins again in 5th grade. Let's say there is sufficient improvement by 7th grade that the objective indicia that's determined, whether the potential that the IQ shows should be met is in fact met, right? And there's no disagreement, at least as a mathematical matter, that it's being met, right? So let's say that's done in 7th grade. So in my hypothetical, between 7th grade and now 10th grade, all those objective indicia show that the person is meeting all of the objective criteria. If the child in my hypothetical remains classified between 7th grade and 10th grade, would they have an RA and or ADA claim? It depends on why, and the reason I say that is because is it possible for a student with a specific learning disability to remediate that disability to the extent that they're now performing consistent with their ability? Yes it is. The underlying disability, the underlying problem still exists, but is it possible for a student to remediate the effects of that? Certainly. Now if the district keeps... I want to know when you're liable. That's what I want to know. If the district recommends that the student stay in special education because they're to regress, there's no liability there. That's the district saying to the parents, this is our concern. We're concerned if we pull out the supports and services that are in place that have allowed your child to now get up to the point where they're performing consistent with their ability, they're going to regress and that's going to cause a problem. Let's keep the services in place. That's a perfectly acceptable result. If the district on the other hand says, well we know now that they've completely remediated and we know that it would be a violation of the student's rights to keep them in special education, but nevertheless we think that we're going to do that anyway, then there's a potential for a claim under the RA or the ADA. But in those circumstances, one of the things that I can't stress enough to the court is that, and I think it came up before, is that the IEPs is a negotiated process. This is not a situation where the school district comes in and says, this is absolutely what we're going to do. There's a team that gets together and formulates the IEPs that consists of the parents. And the fact in this case that at no point in time did the parent complain about the services that the district was providing or, and in fact even requested additional services over the years, I think shows strongly that the district was not deliberately indifferent. Is it possible that the district could have made a mistake and would be liable under the IDEA? Sure. That's possible. And would the parent, the fact that the parent consented, relieve the district of its IDEA liability? No. But in this case, where we're talking about a claim for intentional discrimination under 504 and the ADA, an IDEA claim violation in and of itself doesn't prove that. You have to prove something more, and you have to show that there was deliberate indifference at a minimum. And in this case, that clearly was not met on the record. Maybe your answer answers my question. That is, deliberate indifference is the appropriate standard of culpability for regarded as disabled discrimination claims that this would fall under, under the ADA and Section 504. Because there's sort of a circularity here. To show a higher standard of culpability, like some form of intent that would amount to discriminatory animus, you would almost have to say that the school district knew the child was not disabled, and nonetheless kept her in some sort of special education program. But you can't have regarded as disability discrimination if what you're requiring is a recognition that she is, in fact, not disabled. So it's circular. And I think that, I see that my time has expired. I can finish answering this question, and the panel has some more questions. But I think that the point that Your Honor brings out is a good one, which is that the idea that simply regarding a student as being disabled isn't enough for liability. That gets you past the first step of, okay, does the ADA or Section 504 apply at all? So in this case, the district would have to have knowledge that the student was not disabled, but they could still nevertheless treat them as if they were disabled. And if that were the case, then they would be regarded as disabled, because even though they didn't have a disability, and the district knew they didn't have a disability, if they treated them as if they were disabled, that would still trigger the protections of the statutes. Or if they were deliberately indifferent to the indications that she was not disabled. That's correct. Okay. Thank you. Thank you very much. Thank you. Rebuttal? No. Thank you. Just briefly, Your Honors, a couple of clarifications. I'm hoping that this was just an error, but the comment by my colleague that the Americans with Disabilities Act is a spending clause statute, that's not correct. And in addition, the other thing I wanted to bring to the Court's attention is with respect to the deliberate indifference standard, which is the question for the Court is how to construct the deliberate indifference standard so that it meets the intent of 504. The intent of 504, and this has never been changed, was to disabuse the stereotypic views of people with disabilities, and that is why it includes the regarded as language, and that is also why the Americans with Disabilities Act as amended updated that and embraced that. So that is before the Court. The other thing I wanted to mention is with respect to the informed consent, the language that we cited in our brief on informed consent is from the statute. It's not an outrageous request. It's not what anyone would consider to be beyond the requirements. And the reason is that parents have to turn to the school districts. They have to trust the school districts, and that's what this mother did. And so to say, well, because there wasn't a challenge earlier is unfair, in addition to which the record does reflect some challenges. The child herself objected to going into special education. The child objected, even once she had an IEP, to going to the classes. The child voted with her feet in 10th grade to refuse to go to special ed classes. So those indices are not common. I don't see those much in my practice, and I don't think they're common, and they should be put the district on notice. Thank you. Unless you have questions. Just one question. Did your adversary describe aptly what the criteria for judging whether SH was disabled in this instance? He said that it's a combination of IQ, potential, and then looking at objective indicia. Not quite. I think it's better explained in our brief and also in the reports of our experts, which are in all of the appendices. The place that it's best described, however, is from the independent evaluator, who is Mr. Abdullah Johnson, in his report, and that's at A1016. Basically, he says, look, this is not a questionable case. This is a clear case of a mistake, and that may aid the court. Thank you. Thank you. Case is well argued. Taken under advisement. Ask the court to recess the court.